1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEVEN ANDRE, | ) Case No. 5:14-cv-02888-PSG |
| | ) |
| Plaintiff, | ) **ORDER GRANTING MOTIONS TO** |
| v. | ) **DISMISS** |
| | ) |
| BANK OF AMERICA, N.A., et al., | ) **(Re: Docket Nos. 12 and 16)** |
| | ) |
| Defendants. | ) |
| | ) |

Like many homeowners, Plaintiff Steven Andre purchased his Salinas home in 2004 with

the assistance of a mortgage loan secured by a deed of trust.[1]  After Andre fell behind in his

payments and struggled to get his loan modified, he confronted three separate notices of default

and mounting balances.  Eventually each default notice was rescinded, and Andre faces no pending

notice or looming foreclosure.

Not satisfied, Andre filed this suit against the successor to the loan and deed and loan

servicers Defendants Bank of America, BAC Home Loans Servicing, LP ("BANA") and Select

Portfolio Servicing, Inc., alleging economic and other harm from the run-around he endured to get

his payments reduced.[2]  While Andre's experience is sympathetic, his complaint does not

---

[1] *See* Docket No. 1 at ¶¶ 3, 44.

[2] SPS began servicing Andre's loan in late 2013.  *See id.* at ¶134.

1

United States District Court
For the Northern District of California

sufficiently allege facts to substantiate his twelve causes of action.  The court GRANTS

Defendants' motions to dismiss with leave to amend.

## I.

Over the course of the economic downturn, Andre experienced financial trouble and fell

behind in his mortgage payments.  To reduce those payments, in late 2010, Andre applied for a

loan modification.[3]  After a series of back and forths with various BANA representatives that

spanned the next several years, Andre and his applications were repeatedly denied.[4]  BANA's

stated reasons for these denials were often procedural in nature—incomplete paperwork, inability

to verify Andre's identity, among others.[5]  While Andre persisted in his efforts, his account

remained delinquent.

Meanwhile, Andre continued to make payments on his mortgage as best he could, but he

continued to incur penalties for being in arrears.[6]  Between 2010 and 2012, BANA issued three

separate notices of default against Andre's property due to his payment delinquency.[7]

Each time, Andre was successful in obtaining a rescission.[8]  There is currently no pending

or looming foreclosure associated with his property. Andre nevertheless brought this suit against

Defendants asserting twelve causes of action:[9] (1)  accounting; (2) RICO violation; (3) National

Mortgage Settlement violation; (4) California Homeowners Bill of Rights violation; (5) Federal

Consumer Financial Protection Bureau rules violation; (6) injunctive relief; (7) intentional

---

[3] *See id.* at ¶ 49.

[4] *See id.* at ¶¶ 97, 107, 110, 111, 112, 122.

[5] *See id.*

[6] *See id.* at ¶¶ 82, 93, 96, 100, 101, 102, 104, 106, 110, 116, 117, 127.

[7] *See* Docket No. 13 at Exh. D, F, I.

[8] *See* Docket No. 13 at Exh. E, H, L.

[9] Causes of action 1, 3, 4, 5 &12 are alleged against all Defendants; causes of action 2, 7, 8, 9, 10 & 11 are alleged only as to BANA; and cause of action 6 is alleged only as to SPS.

Case No. 5:14-cv-02888-PSG
ORDER GRANTING MOTIONS TO DISMISS

interference with prospective economic advantage; (8) negligent interference with prospective economic advantage; (9) violation of the covenant of good faith and fair dealing; (10) negligence; (11) Unfair Business Act; and (12) declaratory relief.

## II.

This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. §636(c) and Fed. R. Civ. P. 72(a).

As a preliminary matter, Defendants request judicial notice of several documents, including various deeds of trust and notices and rescissions of default.[10] The court may take judicial notice of a "fact that is not subject to reasonable dispute because it is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[11] In the event that the contents of a matter of public record are in dispute, the court may take notice of the fact of the document at issue but not of the disputed information contained within.[12] Because Andre disputes the contents of these documents and their representations about the status of his loan payments, the court will take judicial notice only of the fact that these documents were recorded in the public record.

At this stage of the case, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[13] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and

---

[10] *See* Docket Nos. 13, 17.

[11] Fed. R. Evid. 201(b).

[12] *See Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001).

[13] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

Case No. 5:14-cv-02888-PSG
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
For the Northern District of California

matters of which the court may take judicial notice.[14]  However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[15]

### III.

Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[16]  If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[17]  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18]  Against these standards, none of Andre's claims pass muster.

*First*, Andre alleges in his complaint that he is entitled to an accounting of the exact amount due under his mortgage.  He levies this claim against both BANA and SPS.  But an accounting is an equitable remedy under California law that may only be used as a last resort to claim funds when no other reasonable method is available.[19]  "A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting."[20]

---

[14] *See id.*

[15] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[16] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[17] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[19] *See Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal. App. 3d 1, 14 (1977) (asserting that accounting actions are equitable and appropriate only when "the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable.").

[20] *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009).

4

*United States District Court*
*For the Northern District of California*

**United States District Court**
For the Northern District of California

Here, while Andre alleges varying estimates of the balance,[21] this is far from an unknowable balance or one that cannot be surmised absent an accounting; it does not reek of a complexity that might warrant an accounting.  More fundamental is the fact that Andre has not alleged facts sufficient to show that Defendants in fact owe him any money.  Andre labors through a laundry list of payments and returned payments in his complaint,[22] but he ultimately fails to sufficiently allege that Defendants squirreled away money to which Andre is entitled.  If anything, the confusion is around how many payments Andre made and how many were credited to his account.  But Andre does not dispute that he owes money to Defendants, not the other way around.[23]

**Second**, Andre brings a claim against BANA for violating the Racketeer Influence and Corrupt Organizations Act[24] by scheming to obstruct and prevent mortgage modifications and by fraudulently depriving homeowners the chance to modify their loans.  To state a RICO claim, a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to the plaintiff's business or property.[25]  In pleading these elements, a plaintiff must allege predicate acts that comply with Rule 9(b)'s specificity requirements.[26]  Put

---

[21] While Andre alleges that the principal due on his mortgage changed inexplicably, he only alleges three possible balances on his account: $10,732.08, $35,267.62 and $47,514.45.  *See* Docket No. 1 at ¶¶ 55, 131, 130.

[22] *See, e.g., id.* at ¶¶ 82, 93, 96, 100, 101, 102, 104, 106, 110, 116, 117, 127.

[23] *See id.* at ¶ 135 ("Plaintiff faxed SPS a letter of explanation, an annotated payment detail from Bank of America and a copy of each and every Cashier's check and check payment made after July 2012, for review to document that he was, in fact, only a few payments in arrears.").

[24] *See* 18 U.S.C. § 1962(c) ("[it is] unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt").

[25] *See Sanford v. Memberworks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010); *Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008).

[26] *See, e.g., id.*

Case No. 5:14-cv-02888-PSG
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
For the Northern District of California

another way, Andre must plead with "particularity the time, place, and manner of each act of fraud, plus the role of [the] defendant in each scheme."[27]  This he fails to do.

Under the statute, a "pattern" requires at least two acts of racketeering activity.[28]  While Andre assumes that other individuals suffered the same treatment from BANA, he never alleges with particularity any instances of misconduct other than his personal experience.  He further fails to allege that the mishandling of his account was a pattern of racketeering activity rather than one ongoing predicate act.  While Andre argues that the relevant predicate acts include embezzlement, fraud and extortion, he fails to allege them in his complaint.  In addition, while he does allege with particularity the various communications and exchanges of payments that he has had with BANA over the past several years, he fails to show with sufficient specificity that BANA's alleged failure indeed rises to the level of fraud.  It may be the case that BANA did not accept several of Andre's payments and that Andre incurred unwarranted fees, but there is no indication in the complaint that these actions were part of a scheme to injure Andre that rises to the level of a RICO violation.

*Third*, Andre seeks relief against BANA and SPS under the National Mortgage Settlement, claiming that he has standing to enforce the consent judgment.  In order to be successful, Andre, BANA and SPS all must be alleged to be parties to the NMS.[29]  In other words, the agreement does not create a private right of action for any aggrieved borrower.  While it is undisputed that BANA is a party to the NMS, neither Andre nor SPS is a party,[30] rendering Andre's claim ineffective.

---

[27] *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).

[28] *See* 18 U.S.C. § 1961(5).

[29] The terms of the NMS specifically provide that enforcement is limited to "any party to [the agreement] or the Monitoring Committee."  *USA v. Bank of Am. Corp., et al.*, Case No. 12-cv-00361, 2012 WL 1440437 (D.D.C. Apr. 5, 2012).

[30] Andre does not allege in his complaint that SPS is a party to the NMS.  On this basis alone, Andre's claim against SPS under the NMS fails.

Case No. 5:14-cv-02888-PSG
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
For the Northern District of California

While Andre makes a compelling argument for why "distressed homeowners who are seeking modifications" should be beneficiaries of the NMS, he cites no authority to support his position. Indeed, the case law he does cite suggests the opposite. "Under Ninth Circuit precedent, incidental third-party beneficiaries may not enforce consent decrees, but intended third-party beneficiaries may."[31] The Ninth Circuit has also elaborated that "parties that benefit from a government contract are generally assumed to be incidental beneficiaries, rather than intended ones, and so may not enforce the contract absent a clear intent to the contrary."[32] Contrary to Andre's assertions, the demonstrated intent of the NMS is to benefit parties to the settlement itself—not the public-at-large or any subset of the public who might potentially benefit from the NMS.[33]

**Fourth**, Andre brings a claim under the California Homeowner's Bill of Rights against BANA and SPS claiming they engaged in dual tracking and failed to provide Andre with a single point of contact. The California Legislature implemented HBOR in order to put safeguards into place to protect mortgagors from unfair or fraudulent lending practices, but it was not established to give mortgagors endless opportunities to apply for loan modifications or justify defaulting on their loan payments.[34] Specifically, "the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated . . . prior to January 1, 2013 . . . unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is

---

[31] *United States v. FMC Corp.*, 531 F.3d 813, 820 (9th Cir. 2008).

[32] *Cnty. of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1244 (9th Cir. 2009).

[33] The NMS further contemplates enforcement "solely in the U.S. District Court for the District of Columbia." Andre does not address this issue in his papers.

[34] *See* Cal. Civ. Code § 2923.6(g).

Case No. 5:14-cv-02888-PSG
ORDER GRANTING MOTIONS TO DISMISS

documented by the borrower and submitted to the mortgage servicer."[35]  While Andre is correct that HBOR prohibits foreclosure activity while an initial loan modification application is under review, the statute does not require that lenders or servicers in fact modify a borrower's loan.[36]  As Defendants note, Andre submitted multiple loan modification applications—the first one submitted well before 2013—and Defendants never initiated foreclosure actions while any applications were pending.[37]  Andre has further failed to allege that his circumstances changed such to warrant a "material change" under the statute that would obligate Defendants to consider a further loan modification application.  There are simply no facts to suggest that Defendants violated any requirements set out under Cal. Civ. Code § 2923.6(g).

Andre's allegations that BANA failed to provide a single point of contact are similarly faulty.  Under the statute, "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact."[38]  A single point of contact is defined as "an individual or team of personnel each of whom has the ability and authority to perform [] responsibilities . . . [such as] having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative."[39]  Andre himself chronicles each individual with whom he engaged at BANA.  While it may be true that he was frequently forced to deal with different individuals, the statute only requires that each such individual be someone who

---

[35] *Id.*

[36] *See Nool v. HomeQ Servicing*, 653 F. Supp. 2d 1047, 1052 (E.D. Cal. 2009).

[37] In fact, BANA reviewed each loan modification that Andre submitted, exceeding its obligation under the statute.  *See* Docket No. 1 at ¶¶ 97, 107, 110, 111, 112, 122.

[38] Cal. Civ. Code § 2923.7.

[39] *Id.*

8

Case No. 5:14-cv-02888-PSG
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

has access to the borrower's information and who can assist the borrower with any concerns. It does not require that the single point of contact be consistent over a specific period of time.

Even if Andre's HBOR claim managed to survive, it would ultimately fail due to the fact that HBOR does not apply retroactively. Under California law, a "retrospective law is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute." But HBOR is not such a law. Cal. Civ. Code § 3 specifies that the code is not retroactive unless expressly stated.[40] "In the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature or the voters must have intended a retroactive application."[41] Absent compelling evidence that HBOR was intended to be applied retroactively, this court must join others in finding that it was not.[42]

**Fifth**, Andre alleges that BANA and SPS violated the Consumer Financial Protection Bureau rules by failing to provide a written explanation of his ineligibility for a loan modification before initiating foreclosure procedures. But Andre's allegations undermine his own claim. During the course of its relationship with Andre, BANA recorded three separate notices of default. The first notice was recorded in September 2010—before Andre submitted a loan modification application of any kind.[43] Along the same lines, Andre details the endless number of

---

[40] *See* Cal. Civ. Code § 3 ("No part of [this Code] is retroactive, unless expressly so declared."); *see also In re Marriage of Bouquet*, 16 Cal. 3d 583, n.3 (1976) ("Section 3 of the Civil Code embodies the common law presumption against retroactivity.").

[41] *Evangelatos v. Superior Court*, 44 Cal. 3d 1188, 1209 (1988).

[42] *See, e.g.*, *Gonzales v. Wells Fargo Bank, N.A.*, Case No. 14-cv-03850, 2014 WL 5465290, at *2 (N.D. Cal. Oct. 28, 2014); *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1152 (N.D. Cal. 2013); *Nugent v. Federal Home Loan Corp.*, Case No. 12-cv-00091, 2014 WL 4960902, at *4 n.8 (E.D. Cal. Oct. 1, 2014) (HBOR "is not retroactive and thus does not apply to documents executed prior to January 1, 2013."); *Tavares v. Nationstar Mortg. LLC*, Case No. 14-cv-00216, 2014 WL 3502851, at *7 (S.D. Cal. July 14, 2014); *Pruitt v. U.S. Bank, N.A.*, Case No. 13-cv-01198, 2013 WL 6798999, at *3 (E.D. Cal. Dec. 20, 2013).

[43] *See* Docket No. 1 at ¶ 49.

9

United States District Court
For the Northern District of California

communications he received from BANA—many of which indicated that he was ineligible for a loan modification—during the time period in which the other two notices were recorded.[44]

While Andre posits that his loan modification denials were "revoked, rescinded or withdrawn" and thus could not trigger BANA's ability to record a notice of default, Andre's complaint is far from clear as to the order of events.  As best the court can tell, Andre's final loan modification application was denied in May 2013.[45]  While Andre alleges that in August 2013 he was advised that "his modification application was still in review," there is no further mention of a completed loan modification application until SPS informed him in April 2014 that there was no pending application linked to his account.[46]  Nor does Andre allege that BANA ever recorded an actual notice of default during this period.[47]

While the CFPB rules exist to protect consumers, the requirement to inform the consumer that a loan modification has been denied before initiating the foreclosure process serves to ensure that the consumer is on notice of the impending foreclosure.  Here, Andre was on notice that he was behind in his payments and that loan modification was not going to be a viable option.[48]

*Sixth*, Andre brings claims of both intentional and negligent interference with prospective economic advantage against BANA, alleging that BANA either intentionally or negligently prevented Andre from acquiring a loan modification which harmed his relationship with SPS and his ability to successfully apply for a loan modification from SPS.  To succeed, Andre "must allege the existence of either a contractual relationship or a prospective business relationship

---

[44] *See id.* at ¶¶ 53, 55, 57, 63, 74.

[45] *See id.* at ¶ 122.

[46] *See id.* at ¶¶ 124, 140.

[47] *See id.* at ¶ 128.

[48] *See id.* at ¶¶ 97, 107, 110, 111, 112, 122.

Case No. 5:14-cv-02888-PSG
ORDER GRANTING MOTIONS TO DISMISS

advantageous to [him]."[49]  "Plaintiff's cause of action for negligent interference with economic relations fails to state a claim [where] the complaint does not allege the existence of a specific economic relationship between [the plaintiff] and third parties."[50]

In Andre's complaint, he merely alleges harm to a speculative relationship that did not exist during the alleged interference with his loan modification applications.  In other words, Andre claims that but for BANA's alleged actions, he could have sought financial assistance from Keep Your Home California.  But this cause of action contemplates interference with an existing third-party relationship.  Andre cannot claim that he would have applied to Keep Your Home California if not for BANA.  Rather, Andre would have had to allege that at the time of BANA's alleged bad acts, Andre had already developed a relationship with the third party and failed to procure financial assistance as a direct result of BANA's conduct.

Andre also points to the fact that SPS was reluctant to process a new loan modification in light of his previous history with BANA.  But because SPS was merely a servicer, the underlying economic relationship was between BANA and Andre.  As BANA rightly points out, there simply was no third-party relationship.

**Seventh**, Andre alleges violations of the implied covenant of good faith and fair dealing which BANA allegedly breached by denying his loan modification.  Under California law, an implied covenant is limited to "assuring compliance with the express terms of the contract."[51]  Rather than impose extraneous obligations, the covenant ensures the proper execution of an explicit contract.[52]  Where there is no breach of contract, there can be no breach of the duty of good faith

---

[49] *Baldwin v. Marina City Properties, Inc.*, 79 Cal. App. 3d 393, 407 (1978).

[50] *Silicon Knights v. Crystal Dynamics*, 983 F. Supp. 1303, 1313 (N.D. Cal. 1997).

[51] *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1093-94 (2004).

[52] *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349-50 (2000).

Case No. 5:14-cv-02888-PSG
ORDER GRANTING MOTIONS TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

and fair dealing.[53]  As Andre has not pleaded a breach of contract claim, his implied covenant claim must fail.  While Andre mounts an appeal to emotion by decrying that the law takes a blind eye to the economic disparity between the parties, the law clearly requires that BANA violate the terms of its contract with Andre in order to give rise to a good faith and fair dealing claim.  The only conduct that Andre truly alleges—and is able to state with any particularity—is that BANA denied his loan modification several times.  While that was an action that was clearly to his detriment, it was an action that BANA was entitled to take and which certainly does not give rise to a breach of contract claim.

Andre similarly cannot substantiate a tortious breach of the implied covenant of good faith and fair dealing claim because "[a] claim for tortious breach of contract does not lie under California law in the absence of a special relationship with fiduciary characteristics.  California case law is clear that a commercial loan transaction does not create such a special relationship."[54]  Nor does Andre allege that any fiduciary relationship exists between himself and BANA.  Although Andre cites the Restatement of Contracts for the proposition that every contract imposes a duty of good faith and fair dealing, courts have broad discretion to interpret the tenets laid out in restatements of law.  Because the California courts have clearly spoken on the issue, Andre's argument is unavailing.

*Eighth*, Andre's negligence claim alleges that BANA had a duty above and beyond that of a typical lender to Andre and that it breached its duty by purportedly mishandling his loan modification.  To show negligence, a plaintiff must show (1) a defendant's duty of care to the plaintiff, (2) breach of that duty; (3) causation; and (4) injury to the plaintiff resulting from the

---

[53] *1231 Euclid Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 135 Cal. App. 4th 1008, 1020 (2006).

[54] *Valenzuela v. Am. Home Mortg. Inv. Trust*, Case No. 08-cv-01179, 2009 U.S. Dist. LEXIS 31111, at *65 (E.D. Cal. 2009).

12

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

breach.[55]  The threshold question here is whether BANA owed a duty of care to Andre.  BANA relies on *Nymark v. Heart Federal Savings & Loan Association* for the proposition that "financial institution[s] owe[] no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."[56]  But in *Nymark*, the claimed negligence related to whether a lender owed a duty of care to a borrower during the appraisal process.[57]  The court held only that in assessing the risk inherent in deciding whether to approve a loan, a lender does not owe a duty of care to the borrower because the assessment is intended to protect the lender and not the borrower.[58]

Andre's negligence claim is completely different.  Andre alleges negligence based on BANA's alleged procedural mishandling of his loan.[59]  There is no blanket rule shielding financial institutions from a duty of care as to these types of activities.[60]  Rather, California law provides a multi-factor test to determine whether a financial institution owes a duty of care to a borrower.[61]  The factors include:

> (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered

---

[55] *See Ann M. v. Pac. Plaza Shopping Ctr.*, 6 Cal. 4th 666, 673 (1993).

[56] *Nymark*, 231 Cal. App. 3d 1089, 1096 (1991).

[57] *See id.*; *see also Ottolini v. Bank of Am.*, Case No. 11-cv-0477, 2011 WL 3652501, at *6 (N.D. Cal. Aug. 19, 2011).

[58] *See id.*

[59] Specifically, Andre alleges that BANA's repeated denial of his loan modifications were based on situations created by its own negligence: that BANA failed to contact him because it was calling the wrong number, that BANA claimed he did not live at the property in question when it could have easily confirmed that it was mistaken, that BANA could not confirm Andre's identity but never called him to confirm his identity, that BANA lost or otherwise mishandled his social security number leading to confusion about his identity, among others.  *See* Docket No. 20 at 26-27.

[60] *See Ottolini*, 2011 WL 3652501, at *6 ("*Nymark* and the cases cited therein do not purport to state a legal principle that a lender can never be held liable for negligence in its handling of a loan transaction within its conventional role as a lender of money.").

[61] *See id.* (citing *Nymark*, 231 Cal. App. 3d at 1089.).

13

Case No. 5:14-cv-02888-PSG
ORDER GRANTING MOTIONS TO DISMISS

1    injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the

2    policy of preventing future harm.[62]

3    As to the first factor, even though loan modification itself might have affected Andre, the extent to

4    which it did is remote because BANA never granted a modification.  BANA's stated reasons for

5    denying Andre's numerous applications were always related to a failure to submit documentation

6    or an inability to confirm his identity.  The loan modification denials thus never considered the

7    merits of Andre's loan modification.  This mirrors the fact pattern in *Ottolini* in which the court

8    found no duty because "the loan modification application was never acted on."[63]

9

10        In terms of foreseeability, there was no indication that Andre's application for loan

11    modification was likely to be approved.[64]  It was likewise not foreseeable that the alleged

12    mismanagement of his account would contribute to any ensuing harm.

13        And while it is self-evident that Andre is distressed from his interactions with BANA,

14    Andre has not adequately shown that he has suffered an injury.  At this time, he is still in

15    possession of his home—although he is behind in his mortgage payments—and there are no

16    foreclosure proceedings pending or—as far as the court can tell—on the horizon.  Other than the

17    inconvenience that most individuals experience when dealing with a large financial institution,

18    Andre has not alleged a cognizable injury.

19

20        Because there does not seem to be any cognizable harm, the closeness of the connection

21    between BANA's conduct and Andre's injury similarly cannot be identified.  As to moral blame,

22    Andre has not alleged with any particularity that BANA intended to harm him.  Rather, Andre's

23

24    ———————————

[62] *Id.*

25    [63] *See id.* at *7.

26

[64] While Andre alleges that "the California Attorney General's office wrote to Bank of America

27    and to plaintiff advising that plaintiff 'met the basic eligibility criteria for a principal reduction

28    modification to [his] home loan,'" this is insufficient to establish that his application was likely to be approved.  *See* Docket No. 1 at ¶ 109.

Case No. 5:14-cv-02888-PSG
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    allegations are rife with conclusory assertions that BANA intentionally misplaced documents or

2    altered his personal information without grounding these contentions in fact.

3         The final consideration is whether finding duty here would create a misguided policy going

4    forward.  As articulated in *Ottolini*, this factor cuts both ways.[65]  On the one hand, finding that

5    financial institutions have a duty to manage all elements of a loan modification in a timely and

6    efficient manner would benefit borrowers.  On the other hands, creating a heightened duty may

7    disincentivize financial institutions from providing loans or loan modifications to as many

8    borrowers, which would be a great disservice to the public.

9         Ultimately, the factors weigh in favor of finding no duty, especially since here—as in

10   *Ottolini*—because the application for loan modification never progressed to a concrete stage, "there

11   is no indication of the likelihood that such an application would have been granted."[66]  Without

12   duty, there can be no breach, and thus no negligence claim.

13        ***Ninth***, Andre brings a UCL claim against BANA, pointing to BANA's alleged failure to

14   credit payments, intentional delay and prevention of the loan modification and its ultimate denial as

15   UCL violations.  In order for a plaintiff to establish standing under the UCL, he must allege an

16   "injury in fact" and that he has "lost money or property as a result of such unfair competitions."[67]

17   As discussed above, Andre has failed to establish an injury in fact in his complaint.  He has not lost

18   his property, and while he claims in his opposition brief that he lost over $20,000 in cashier's

19   checks, in his complaint, he particularizes only the ways in which he was unfairly treated, not any

20   resulting injury in fact.[68]

---

[65] *See Ottolini*, 2011 WL 3652501at *7.

[66] *Id.*

[67] Bus. & Prof. Code § 17204.

[68] *See* Docket No. 1 at ¶ 197-98:

Case No. 5:14-cv-02888-PSG
ORDER GRANTING MOTIONS TO DISMISS

1 But even if Andre could establish standing, he has failed to allege any unlawful, unfair or

2 fraudulent predicate acts upon which a claim might be grounded.  While Andre points to "theft,

3 embezzlement . . . [and] fraudulent deception" as viable predicate acts, he failed to plead causes of

4 action based on any of these theories.  And none of the theories that he did plead pass muster to

5 survive at the Rule 12(b)(6) stage.

6 **Tenth**, Andre seeks injunctive relief against SPS and declaratory relief against BANA and

7 SPS.  In California, declaratory relief is only proper where there exists a live controversy.[69]

8 Similarly, injunctive relief can only be awarded where a plaintiff has sufficiently alleged a breach

9 of duty that a defendant owes a plaintiff.[70]  Andre seeks equitable remedies here, which "are

10 dependent upon a substantive basis for liability [and] have no separate viability" if the remainder of

11 the claims fail.  Because Andre's underlying claims fail, so too do his injunctive and declaratory

12 relief claims.

13

14 **IV.**

15 Defendants' motions to dismiss are GRANTED.  Dismissal without leave to amend is only

16 appropriate if it is clear that the complaint could not be saved by amendment such as after a

17 plaintiff's "repeated failure to cure deficiencies by amendments previously allowed."[71]  Because

---

197.  Defendants' actions complained of herein including, but not limited to, Defendants' failure to credit payments, alteration of information, intentional delay, bogus and bad faith denials of modification eligibility, and the obstruction and prevention of approval of plaintiff's loan modification application, constitute unfair, unlawful, and/or fraudulent business acts and practice under Cal. Business & Professions Code § 17200, et seq.

198.  By reason of Defendants' fraudulent, deceptive, unfair, and other wrongful conduct as herein alleged, Defendants have violated Business & Professions Code § 17200, et seq. by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of the benefit of a mortgage loan modification.

[69] *See Californians for Native Salmon and Steelhead Ass'n v. Department of Forestry*, 221 Cal. App. 3d 1419. 1429 (1990).

[70] *See McDowell v. Watson*, 59 Cal. App. 4th 1155, 1159 (1997); Shell Oil v. Richter, 52 Cal. App. 2d 164, 168 (1942).

[71] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

1   Andre has not previously amended his complaint and the court cannot yet say that amendment

2   would be futile, leave to amend also is GRANTED.  Any amended pleadings shall be filed no later

3   than January 5, 2015.

4

5   **SO ORDERED.**

6   Dated: December 5, 2014

7

8   _____
    PAUL S. GREWAL
9   United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:14-cv-02888-PSG
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
For the Northern District of California